# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

2015 JUL -8 P 12: 39

| | |
|---|---|
| **CATHERINE GEBHARDT** | Case No.: _3:15 - CV - 286_ |
| **Plaintiff, pro per** | _Varlan / Guyton_ |
| v. | **VERIFIED COMPLAINT** |
| **BEAL FINANCIAL CORPORATION et al,** | |
| **LORRAINE BROWN; JOYCE LINGER;** | **JURY DEMAND** |
| **JERRY KERLEY; DOUGLAS E.TAYLOR** | Pursuant: |
| **DOES 1 THROUGH 10** | 42 U.S. Code § 1983 |
| **Defendants** | 42 U.S. Code § 1985 |

## PLAINTIFF'S VERIFIED COMPLAINT

Here comes Plaintiff, Catherine Gebhardt, self represented, and incorporates herein her Notice of Related Cases and all pleadings in her Notice of Constitutional Questions filed in the related case *LNV Corporation v. Gebhardt.* Case No. 14-5605 in the United States Court of Appeals for the Sixth Circuit, as well as, the Notices of Constitutional Questions filed by the other LNV/Beal victims in the noticed related cases; and makes the following claims:

## PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is, Catherine Gebhardt, a single woman. She resides at 3753 Thomas Cross Road, Sevierville, TN 37876.

2. Defendant Beal Financial Corporation ("Beal") is a corporation with a corporate address 6000 Legacy Drive, Plano, TX, 75024. Beal is the parent corporation of Beal Bank USA which is the parent corporation of LNV Corporation, ("LNV"). Beal is privately owned and operated

by Daniel Andrew "Andy" Beal ("D. Andrew Beal") who is a citizen of Texas of and who is known to work at the offices located at 6000 Legacy Drive, Plano, TX, 75024.

3.    Defendant Lorraine Brown is a natural person convicted of a felony crime (Plaintiff is a victim of her crimes) and is incarcerated at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, in the custody of the Michigan Department of Corrections located at 3201 Bemis Road, Ypsilanti, MI 48197-0911 (c/o Warden Anthony Stewart), phone: 734-572-9900.

4.    Defendant Jerry Kerley a former attorney is a natural person convicted of a felony crime (Plaintiff is a victim of his crimes) and is incarcerated at a the United States Penitentiary, McCreary (USP McCreary) 330 Federal Way, Pine Knot, KY 42635; phone: (606) 354-7000.

5.    Defendant Joyce Linger is a natural person and resides at 202 Simmons Street, Spencer, West Virginia 25276.

6.    Defendant Douglas E. Taylor is an attorney practicing in Sevierville, Tennessee at 121 Court Ave Sevierville, TN 37862.

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a civil action brought by a victim of federal felony crimes in which the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00 and where the issues of law and fact are between citizens of different states. Additionally Plaintiff's causes of action are federal question involving violations of her constitutional rights and violations of 15 U.S.C. 1601 et seq (Fair Debt Collection Practices Act); Title 18 U.S.C. § 4 (Misprision of felony); 18 U.S. Code § 371 (Conspiracy to Defraud the United States); 18 U.S. Code § 495 (Forgery of contracts and

deeds); 18 U.S. Code § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity); 18 U.S. Code § 1961 et seq. (Racketeer Influenced and Corrupt Organizations); 18 U.S. Code § 3663A (Mandatory restitution to victims of certain crimes); 42 U.S. Code § 1983 (Civil action for deprivation of rights); 42 U.S. Code § 1985 (Conspiracy to interfere with civil rights); 18 U.S. Code § 1512 (Tampering with a witness, victim, or an informant). Federal courts have original jurisdiction of federal questions.

8.      Plaintiff resides in Sevierville, Tennessee. Defendant Beal does business in Tennessee. The property title in question is located in Tennessee. The criminal actions by Defendants that resulted in theft of Plaintiff's property occurred in Tennessee. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## CAUSE 1
## FRAUD IN THE FACTUM AT MORTGAGE ORIGINATION

9.      On November 11, 2002 Plaintiff entered into a mortgage contract with a party misrepresented as "the lender", Sebring Capital Partners ("Sebring"). Defendants Joyce Linger and Jerry Kerely orchestrated this mortgage contract and were beneficiaries of certain proceeds from certain frauds intentionally perpetrated on Plaintiff and unknown financial institution(s) consistent with the crimes for which Jerry Kerely has been convicted, *United States v. Jerry Kerley*, 13-5821 (6th Cir. 2015). Certain intentional omissions including but not limited to the existence of other parties to the contract (Defendant Does1 through 10) known to Linger and Kerely but hidden from Plaintiff, the existence of other "loans" or obligations made in Plaintiff's name hidden from Plaintiff that resulted in financial gain for Linger and Kerely at Plaintiff's expense including but not limited to a forged loan application which Plaintiff never filled out

found in documents retrieved from Jerry Kerley's office after September 2012 that claimed she was not a U.S. citizen and that she was not purchasing the property for residential purposes; false property records filed by Linger and Kerley in the Sevier County recorder's office and "after the fact" alterations made to mortgage related documents and loan application(s) by Linger and Kerley in collusion with yet unknown co-conspirators (Defendant Does1 through 10); forged and altered loan applications made by Linger and Kerley using copies of Plaintiff's signature for their own personal gain. Also unknown to Plaintiff, she was unwittingly made into a "straw buyer" by Linger and Kerley; who intended for Plaintiff to lose title or never keep title to her property through their fraud scheme in spite of Plaintiff paying more than $200,000 for the property secured by the aforementioned mortgage contract which Linger and Kerley knew or should have known she would pay this and ultimately lose it as a result of their fraud scheme.

10.     These aforementioned misrepresentations and omissions were knowingly made by Defendants Joyce Linger and Jerry Kerely with intent to defraud Plaintiff who relied on this misrepresentation as being true and who incurred significant damages as a result of this reliance.

11.     Defendant Jerry Kerley and others (his co-conspirators) were convicted by the United States of conspiracy to commit wire fraud affecting a financial institution and bank fraud, wire fraud affecting a financial institution, bank fraud, making a false statement to a financial institution, and money laundering, all arising out of a mortgage fraud scheme. *United States v. Jerry Kerley*, 13-5821 (6th Cir. 2015). This criminal conviction arose from the discovery by the United States of criminal acts by Kerley that occurred in 2006; however Kerley and his co-conspirators were committing such crimes a early as 2002, Plaintiff is an victim of Kerley's crimes.

12. The aforementioned acts of fraud perpetrated on Plaintiff (and other financial institutions) by Defendants Jerry Kerley and Joyce Linger in the origination of the aforementioned mortgage contract are consistent with the criminal conspiracy acts identified by the United States in their indictment and conviction of Jerry Kerley.

13. In early 2013 Plaintiff had an accounting audit done of her mortgage origination documents. The accountant reported that none of the financials in Plaintiff's origination documents balanced. Unknown to Plaintiff until this audit Jerry Kerley and Joyce Linger padded the loan and settlement statement with an additional sum of twenty eight thousand dollars ($28,000) that was never supposed to be included into the loan. Plaintiff had made a separate private contract with the "seller" Ronny Sullivan to purchase three (3) acres adjacent to the property secured by the mortgage contract (i.e. the Note and deed of trust executed by Linger and Kerley) and she had agreed to separate owner financing of that tract of land. Plaintiff paid Sullivan directly and independent of the mortgage contract for this separate three (3) acre parcel of land. The hidden "lender" paid Guaranty Land Title (i.e. Jerry Kerley) and not Plaintiff. Since Plaintiff was unaware that the twenty eight thousand dollars ($28,000) had been padded into the loan; it could only be concluded that Defendant Kerley and/or Linger indented to keep this twenty eight thousand dollars ($28,000) for their own personal gain at Plaintiff's expense.

14. Plaintiff moved to Sevierville Tennessee from Montgomery Texas on September 30, 2002. On Labor Day weekend 2002 (Labor Day 2002 was September 2nd) she had visited Sevier County with her children in preparation for their move. She intended to purchase a house and had looked at several properties including the property at 3753 Thomas Cross Road. The

only Broker she worked with was Joyce Linger. The only loan application she signed was on November 7, 2002 at the closing.

15.     Two letters from Sebring were sent to Plaintiff's Texas address between September 2, 2002 and November 7, 2002. Neither letter was immediately received by Plaintiff because of her move and had been forwarded from her prior Texas address to her Tennessee address. One letter is dated November 4, 2002 and was included in as an Exhibit to the answer Doug Taylor prepared (Doc. 4) to LNV Corporation's ("LNV") complaint, i.e. *LNV Corporation v. Gebhardt* (See Exhibit A attached hereto.) This letter was discovered by Plaintiff only weeks before it was submitted to the court with this answer (Doc. 4) filed on September 27, 2012.

16.     On or around June 25, 2015 Plaintiff discovered another letter from Sebring dated September 17, 2002. (See Plaintiff's Exhibit B attached hereto.) This letter states Plaintiff's broker was "America's Doc Com Mortgage Corporation" while the other dated November 4th letter states her broker was "PrimeOne Group Inc." Defendant Linger was to Plaintiff's knowledge only employed by PrimeOne Group Inc. Since she is the only broker Plaintiff dealt with Defendant Linger kept hidden from Plaintiff her affiliation with America's Doc Com Mortgage Corporation. There are numerous inconsistencies between these two letters indicative of fraud.

17.     In late summer 2013 Plaintiff retrieved some of her loan origination documents from Guaranty Land Title. Devin Koester, Defendant Kerley's partner at Guaranty Land Title, did not want to give Plaintiff everything she requested however she did get a copy of the loan application which turned out to be an altered loan application.

18.    The only loan application signed by Plaintiff was signed on November 7, 2002.  This loan application was filled out correctly stating that Plaintiff was purchasing the property for residential use and intended to live there and that she was an American citizen.

19.    The copy of her loan application given to her by Devin Koester was falsely filled out stating Plaintiff was not a U.S. citizen and was not purchasing the property for residential purposes. This copy had Plaintiff's signature on it.  Plaintiff learned in 2013 that the only way her signature could have been used on this false application was if it had been electronically copied from the from loan application she signed on November 7, 2002 at the closing orchestrated by Defendant's Linger and Kerley and placed onto a blank loan application that was later altered with the false information.

20.    In mid-2014 Plaintiff obtained from Sevier County Bank a copy of the fed wire transaction deposited into the Guaranty Land Title escrow account on November 7, 2002 specific to her loan and discovered the party that wired the funds was Bank One N.A. Chicago and not Sebring Capital Partners. This is indicative that Sebring Capital Partners was a "straw lender" and that Plaintiff contracted with parties hidden from her. A contract that originates in fraud is not enforceable.  Yet Beal's grandchild subsidiary brought an action for "breach of contract" against her, when it knew or should have knew the contract was not enforceable, (_LNV v Gebhardt_).  And then Judge Thomas A. Varlan knowingly violated Plaintiff's constitutional rights to due process and equal protection of law; violated federal rules of evidence; abused judicial discretion; and engaged in a criminal conspiracy in collusion with the three attorneys named herein and proceeded to grant LNV a summary judgment of more than $400,000 against

Plaintiff and a writ of execution allowing LNV to unconstitutionally and illegally sell her property.

21.　　In late-2013 Plaintiff discovered that a Bank of America bank account she was instructed to wire funds into for payment of her loan by Defendant Beal's subsidiary's subsidiary LNV's ("Beal/LNV") mortgage servicer MGC Mortgage Inc. ("MGC") was a global account with Dovenmuehle Mortgage Inc. ("DMI"), an LPS related agent for MGC, as the domestic intermediary for an undisclosed foreign beneficiary (which was not MGC or LNV). Sending Plaintiff's loan payments to an unknown/undisclosed overseas party is a violation of 15 U.S.C. 1601 et seq. (Fair Debt Collection Practices Act). It would also be a crime pursuant to 18 U.S. Code § 1956 et seq. (Laundering of monetary instruments).

## CAUSE 2
## FRAUDULENT LEGAL REPRESENTATION

22.　　In mid-September 2011 Plaintiff hired Defendant attorney Doug Taylor who filed Plaintiff's related case *Gebhardt v. Dovenmuhle Mortgage Inc*. Defendant Taylor also claimed to represent Plaintiff in the related case *LNV Corporation v. Gebhardt* filed in September 2012.

23.　　Specific to *LNV Corporation v. Gebhardt* Taylor had refused to add Defendant Kerley to Plaintiff's case claiming he was a "dead horse" since he was already convicted. Plaintiff only learned in October 2013 Taylor's real reason for not wanting to add Kerley to the case was that he was friends with Kerley; and may have been involved in some of Kerley's fraud schemes.

24.　　Plaintiff began to discover only in October 2013 that Defendant Taylor had misrepresented his services and intentions to her and did so to deceive her and was in fact not

working in her interests but was instead in collusion with Defendant Beal's grandchild subsidiary LNV and its attorneys Ronald G. Steen Jr. and Kevin Hartley to promote the interests of Defendant Beal and to commit fraud upon the court with intent of depriving her of her constitutional rights to due process and equal protection of law and Plaintiff's civil rights. Plaintiff is entitled to relief under 42 U.S. Code § 1983 (Civil action for deprivation of rights); 42 U.S. Code § 1985 (Conspiracy to interfere with civil rights).

25. Specific to *Gebhardt v. Dovenmuhle Mortgage Inc.* after Plaintiff fired Defendant Taylor on October 2, 2013 unknown to Plaintiff he filed a non-resident publication and an affidavit in the aforementioned case on October 25, 2013. This was done without Plaintiff's consent and it was discovered by Plaintiff on or around October 29, 2013 when she requested copies of the records from this court case. Defendant Taylor's affidavit is perjured testimony because he already knew Defendant Linger's correct address was 202 Simmons Street, Spencer, West Virginia 25276 and not the address for Outback Realty at 1007 Street Of Dreams Way , Gatlinburg, TN 37738 which he put on the summons. Taylor knew that this Gatlinburg, TN address was incorrect because Plaintiff repeatedly gave it him beginning in early 2012 when she learned service on Linger in *Gebhardt v. Dovenmuhle Mortgage Inc*. had not occurred.

26. Plaintiff discovered only when Defendant Taylor withdrew from this case in or around April 2014 he had entered onto his certificate of service sent to Plaintiff and Defendant Linger Linger's correct address of 202 Simmons Street, Spencer, West Virginia 25276. Additional evidence exists to substantiate Plaintiff's claim that Defendant knew Lingers correct address when he submitted to the court his perjured affidavit to the court on or around October 29, 2013.

27.    Therefore it was only in April 2014 that Plaintiff learned about the extent of the fraud perpetrated against her by Defendant Taylor.

28.    Defendant Taylor should have informed Plaintiff he had a conflict of interest, but he did not as a result he intentionally failed to show Plaintiff's evidence that her mortgage had originated in fraud to the court in *LNV Corporation v. Gebhardt*.

29.    Plaintiff completely relied on Defendant Doug Taylor's advice as her counsel.  Unknown to her until October 2013 he had misrepresented his services to Plaintiff.  While he claimed to be representing her interests Taylor evidence suggests that he was acting in collusion with other Defendants and acting in their interests against Plaintiff's interests.  Although LNV and DMI were timely served summons in *Gebhardt v. Dovenmuhle Mortgage Inc.* they failed to answer the complaint.  Taylor failed to file a default judgment.  Plaintiff trusted Taylor and never learned until October 2013 that Taylor should have known to file a motion for default judgment against LNV and DMI; if he had LNV would not have been able to file a breach of contract complaint against Plaintiff in the federal court, *LNV Corporation v. Gebhardt.*  Instead Taylor told Plaintiff that he had "scared the bad guys away" (meaning LNV and DMI) and that it would be in her best interest to non-suit them and if they came back within a year she could revive the case without paying the filing fees again.  This proved to be extremely bad advice as it opened the door for LNV to file their complaint against Plaintiff in federal court.  Considering that Plaintiff learning in April 2014 that Defendant Taylor appeared to be intentionally preventing service on Defendant Joyce Linger, any reasonable person would conclude that Taylor's bad advice was intentional to cause harm to Plaintiff.

30.     Immediately after LNV filed their complaint in federal court Plaintiff told Defendant

Taylor she wanted to file a counter complaint, that she did not want the case heard by a

Magistrate, and that she wanted a jury trial.  Unknown to Plaintiff, but known to Defendant

Taylor she had a limited time frame of 30-days in which to file a counter complain without

having to move for leave of the court and risk a judicial denial.  Each and every time Plaintiff

met with Taylor she asked him to file a counter complaint.  Taylor had one excuse after another

for why he couldn't do it, typically reasons relating to his being ill or a family being ill.  Plaintiff

had a witness with her for these meetings.  Taylor also never requested a jury trial or specified

that the case was not to be handled by a Magistrate.

31.     Plaintiff provided Taylor with ample evidence that the documents LNV had attached to

its complaint were forged falsities.  Plaintiff specifically pointed out how LNV's purported "true

and accurate" copy of the "original" Note could not be such; i.e. her signature had been

electronically copied from another document and pasted onto a blank page that LNV purported

was part of the "original" Note.  This forged signature was not the only problem with LNV's

purported "true and accurate" copy, it is just one of many problems that indicate it was a forgery

but for sake of brevity Plaintiff will use just this element of fraud make her point clear in this

complaint.  Unknown to Plaintiff, Taylor was feeding all her evidence back to Defendant

Beal/LNV and its counsel.  In the answer Taylor prepared to LNV's complaint he pointed out

each and every element of fraud (false statements and forgeries etc) and when LNV filed a

motion for summary judgment on August 19, 2013 they had electronically cleaned up the

signature and each and every other element of fraud pointed out in Plaintiff's answer and

attached the cleaned up copy to their motion for summary judgment.  Both copies of the alleged

"original" Note (the "dirty" copy and the "clean" copy) cannot be a "true and accurate copy". (See Plaintiff's Sworn Affidavit and its Exhibits.)

32.    On September 30, 2013 in *LNV Corporation v. Gebhardt* Taylor filed a document titled in the docket as: "Response to Reply to Motion for Summary Judgment" (Doc 15). This document was not prepared by Taylor. Taylor emailed Plaintiff and spoke a family member on the phone and told Plaintiff to "copy and paste" the header (i.e. case styling) saying all attorneys do this (but he did not provide Plaintiff with any document to "copy and paste" from) and said he would then "tweak" it the following day. All the court documents in Plaintiff's possession were hard copy printouts so she had to type the heading as best as she could which looked very bad. The next day Taylor asked Plaintiff's family member who had agree to drive to the federal courthouse to file the document for Taylor to come to his office, where without making any significant changes to the document that Plaintiff had prepared and emailed to Taylor as he had instructed her to do. Then Taylor in the presence of Plaintiff's family member printed the document. Taylor's printer was running out of ink so part of the header was missing and when Plaintiff's family member pointed this out Taylor told him it didn't matter. Taylor then told Plaintiff's family member he needed to file a motion for continuance, and Plaintiff's family member asked Taylor to do that before he ran off to the court house so he wouldn't need to make multiple trips. Within a few minutes Taylor prepared the motion which was filed on September 30, 2013 as (Doc 16) in *LNV v. Gebhardt*. Plaintiff did not see this until a few days later; and what Taylor put this document, along the numerous other things Plaintiff discovered Taylor had done and had not done in opposition to her interests in the case caused her to file her pro se affidavit (Doc 17) in *LNV v. Gebhardt* on October 2, 2013.

33.    In this motion for continuance prepared by Taylor he claimed Plaintiff had run out of money. However he had not made any verbal or written payment demands; and after Plaintiff fired Taylor as her counsel on October 2, 2013 she demanded a full accounting history from Taylor and filed this demand with the court as (Doc 28 and/or 29) in *LNV v. Gebhardt*.  When Plaintiff finally got Taylor's accounting weeks later the bulk of the funds she had paid Taylor were attributed to the actions Taylor made on October 25, 2013 without Plaintiff's knowledge or consent specific to *Gebhardt v. Dovenmuhle Mortgage Inc*. and already referenced in paragraph 25 of the foregoing.

34.    Plaintiff paid Defendant Taylor approximately $15,000 in weekly payments beginning in September 2011.  Taylor's comments in his motion for continuance could only have been made to make her look bad in the eyes of the court.  The actions he took and those he failed to take caused Plaintiff to suffer significant financial damages; emotional distress and mental anguish.

35.    Unknown to Plaintiff until August 19, 2013, but known to Taylor from the first scheduling order in the case around October 2012 which Taylor did not share with Plaintiff, the cut-off date for discovery was September 17, 2013.  Plaintiff constantly asked Taylor to send interrogatory questions on Beal/LNV he never did even though Plaintiff supplied him with the questions.  Plaintiff asked Doug to write a debt validation letter pursuant to 15 U.S.C. 1601 et seq (Fair Debt Collection Practices Act) and to ask for a complete accounting of her payments from the inception of the loan. This he did, but when Beal/LNV sent a packet of ninety one (91) pages late in September 2012 that failed to validate the debt with a letter to Taylor where Kevin Hartley, Beal/LNV's counsel, wrote that LNV did not have to provide Plaintiff with a full accounting of her payments from the loan's inception Taylor never challenged this or objected to

this. His failure to do so was not in Plaintiff's interest. Beal/LNV was in violation of 15 U.S.C. 1601 et seq and Taylor did nothing to seek protection for Plaintiff under this Act. Plaintiff did not learn until May 2015, however Taylor knew or should have known, that Hartley's comment and Beal/LNV's failure to validate the debt after they received Plaintiff's debt validation letter was a violation of the Fair Debt Collection Practices Act and entitled her to relief under this Act.

36.     As early as September 2012 Plaintiff asked Defendant Taylor for a complete copy of her origination documents from Guaranty Land Title and requested Taylor get these documents but he resisted. Plaintiff did not get these documents until late in the summer of 2013, and the copies Taylor gave Plaintiff were incomplete with nothing of material importance such as the Note, the deed of trust, the settlement statement, the TILA disclosure and the loan application within the copies Taylor collected from Guaranty Land Title for Plaintiff.

37.     Unknown to Taylor Plaintiff had already gone to Guaranty Land Title herself before her did and retrieved a copy of her loan application (which turned out to be the altered loan application already mentioned); the settlement statement; and a copy of the Note Plaintiff signed at closing which like the copy Plaintiff received at closing of the loan does not have "original" stamped all over it; whereas the copies produced by LNV and submitted to the court in *LNV v. Gebhardt* did.

38.     Anyone can take a rubber stamp with the word "original" and stamp a photocopy then copy it to deceive someone (i.e. a judge) into thinking it is a copy of an original document when it is not. A stamp of the word "original" does not make a document an original. This is another alteration to Beal/LNV's alleged true and accurate coy of the "original" Note that casts doubt on its authenticity; and the credibility and ethical standards of Beal/LNV's attorneys.

39.     A determination about whether or not the alleged "original" Note in Beal/LNVs' possession is in fact the original or a forgery is the most important material fact to be determined by this court specific to a determination of title to property where one party presents title related documents and the other party argues that they are forgeries and shows evidence to the court of such.  A determination regarding this critical material fact specific to which party has title cannot be made without an expert examination of the documents in question and sworn expert testimony about the findings of that examination. Plaintiff and the other Beal/LNV victims in the noticed related cases seek to do this; and their constitutional rights to due process and equal protection of law dictate they MUST be permitted to do so.  Any attempt by opposing counsel or the judiciary to thwart their right to this discovery is a violation of their constitutional rights to due process and equal protection of law under the fifth (5th) and fourteenth (14th) amendments to the United States Constitution.  These Beal/LNV victims have related their cases for this specific purpose to make such discovery accessible to them as pro se litigants.

40.     Making the alleged original Notes accessible to OMNI in Chicago will allow these pro se Beal/LNV victims to share the costs associated with such an expert examination of these documents for authenticity and to the expert testimony from the expert document examiner required by the courts.  The consolidation of these noticed related cases for the expert examination of the alleged original Notes for authenticity by one expert in one location also reduces courts costs and workload.

## CAUSE 3
## FRAUDULENT MISAPPROPRIATION OF MORTGAGE PAYMENTS WITH INTENT TO DEFRAUD AND DEPRIVE PLAINTIFF OF DUE PROCESS WITH INTENT TO STEAL HER PROPERTY THROUGH COURT SANCTION

41.     On September 5, 2012 Defendant Beal via its grandchild subsidiary LNV filed a frivolous breach of contract complaint against Plaintiff, which its owner D. Andrew Beal knew or should have known was frivolous. See *LNV Corporation v. Gebhardt,* Case No. 3:12-CV-468-TAV-HBG.

42.     Attached to this frivolous breach of contract complaint was a purported "true and accurate copy" of the alleged "original" Mortgage Note ("Note") in the possession of Defendant Beal/LNV.

43.     In Plaintiff's answer as the defendant in *LNV Corporation v. Gebhardt* she pointed out several defects in this alleged "original" Note that made it a forgery and not the original Note. These defects included but are not limited to a floating signature page (not part of the body of the Note) with a black ink streak down the page which Plaintiff identified in her answer to Beal/LNV's complaint as a copy of her signature gleaned from another document and electronically placed onto a blank page that was never part of the original Note through a process using a software tool like Adobe PhotoShop©.

44.     In February 2011 the law firm of Shipiro & Kirsch LLP mailed Plaintiff a notice of default and intent to sale Plaintiff's property. This notice identified Shipiro & Kirsch as a debt collector and contained a statement about Plaintiff's rights pursuant to 15 U.S.C. 1601 et seq (the Fair Debt Collection Practices Act). Plaintiff hired attorney Rolfe Spraussfogel to write a debt validation and debt verification demand letter pursuant to 15 U.S.C. 1601 et seq. and mailed this

letter to Shipiro & Kirsch LLP within the 30-days required by 15 U.S.C. 1601 et seq. Shipiro & Kirsch LLP failed to respond as required pursuant to 15 U.S.C. 1601 et seq. The aforementioned notice of default and intent to sale stated that Dovenmuhle Mortgage Inc. ("DMI") was Shipiro & Kirsch's client. No communication about Plaintiff's debt validation demand was made by Beal/LNV/MGC until a letter dated June 23, 2011 was sent by Erica Thomas to Plaintiff's Congressman Roe's office in response to a letter his office sent specific to Plaintiff's ongoing issues with MGC's failure to apply payments she made on her mortgage and a false claim of default based on these misappropriated payments. In October 2008 GMAC told Plaintiff that MGC would be taking over the servicing of her mortgage; so in October 2008 Plaintiff purchased a certified cashier's check for six thousand dollars ($6,000) made payable to MGC Mortgage Inc. and mailed it the address GMAC had given her: 7195 Dallas Parkway, Plano, TX 75024. This check was processed and paid to Beal Bank SSB on October 29, 2008. This check to cover Plaintiff's mortgage payments through to January 2009. (See Plaintiff's Exhibit D attached hereto.)

45. Plaintiff phoned MGC numerous times throughout November and December 2008 to confirm receipt of her $6,000 payment. Most of the time she was unable to reach anyone but whenever she did reach an MGC employee they assured her that they had received her payment but that their system was not up yet; and not to worry as her payment would be reflected as soon as the system was up. Not wanting to get behind on her mortgage Plaintiff phoned GMAC. Between December 2008 and January 27, 2009 Plaintiff paid GMAC an additional $5,500 because neither MGC nor GMAC had credited the $6,000 she paid to MGC to her mortgage.

46.     In January 2009 GMAC told Plaintiff her monthly payments were going to nearly double

to four thousand dollars and 80 cents ($4,000.80).  When she asked why she was never given a

straight answer.  During this time GMAC told Plaintiff that the servicing transfer to MGC was

unsuccessful and they would continue as her servicer instead of MGC, however the $6,000

Plaintiff paid to MGC was never accounted for or applied to her mortgage. Between January

2009 and May 2009 Plaintiff hired Noreen McConnell and Gwen Ford to negotiate a

modification of her mortgage as per the TARP requirements (GMAC got TARP funds).  These

efforts proved fruitless because GMAC acted in bad faith.  (Recently Plaintiff learned that this

pattern of misappropriating payments and/or refusing to take mortgage payments by MGC

because of claims that their system was not up yet, then reverting service back to the prior

servicer which then claimed the homeowner was in default on their mortgage; a self-serving

falsely fabricated default made with intent to foreclose on Plaintiff's and the other Beal/LNV

victims' properties.)


47.     In March 2009 GMAC threatened Plaintiff that they would foreclosure on her property.

Although Plaintiff had not received any notice of default and intent to sale as she did later in

2011, she learned after she hired attorney Andrew E. Farmer in early May 2009 that GMAC had

in fact scheduled a foreclosure sale on her property for May 16, 2009.  (LPS affiliated law firm

of McCurdy & Candler was the Beal/LNV/MGC agent in this foreclosure attempt.)  Farmer filed

*Gebhardt v GMAC Mortgage* in the Circuit Court for Sevier County Tennessee and GMAC and

MGC removed it to federal court where is was summarily dismissed. This summary judgment is

void as it violated Plaintiff's rights to due process and equal protection of law.  Plaintiff and the

other pr se LNV/Beal victims challenge the constitutionality of Federal Rule 56.  (See the Notice

of Constitutional Questions.)

48.     As early as October 2008 Beal/LNV breached an contract that may have existed between

Plaintiff and Beal/LNV by intentionally not applying Plaintiff's $6,000 check to her mortgage

and instead using their misappropriation of this payment to trump up a default so they could

move forward with a foreclosure intent on deceiving courts to gain judicial compliance in a

criminal conspiracy to confiscate Plaintiff's property and the property of the other Beal/LNV

victims in the noticed related cases.  Judge Thomas A. Varlan knew or should have known this

fact because Plaintiff submitted ample evidence to substantiate this fact to her numerous pro se

pleadings in *LNV Corporation v. Gebhardt*.  Judge Varlan also knew of a prior history of

litigation and should have, had he actually educated himself about the genuine issues of the case,

known Beal/LNV's standing to bring an action against Plaintiff was at least questionable and

worthy of discovery.

### CAUSE 4
### VOID JUDGMENT FAVORING LNV DUE TO FRAUD UPON THE COURT, ABUSE OF JUDICIAL DISCRETION AND JUDICIAL CRIMINAL MISCONDUCT

49.     On September 5, 2012 Defendant Beal via its grandchild subsidiary LNV ("Beal/LNV")

filed a frivolous breach of contract complaint against Plaintiff, which its owner D. Andrew Beal

knew or should have known was frivolous. See *LNV Corporation v. Gebhardt,* Case No. 3:12-

CV-468-TAV-HBG.

50.     Judge Varlan lacked discretion to arbitrarily order a summary judgment to a party like

Beal/LNV who presented to the court forged instruments and thereby lacked standing to bring

suit against Plaintiff.  The egregious manner in which Judge Thomas A. Varlan in *LNV v.*

*Gebhardt* continuously abused his judicial discretion and consistently deprived Plaintiff of her

constitutional rights to due process and equal protection of law guaranteed to her pursuant to the

fifth (5th) and fourteenth (14th) amendments to the United States Constitution is indicative of a criminal conspiracy to deprive her of her civil rights. In this particular case it may also be a criminal violation under Title 18 U.S.C. § 4 (Misprision of felony). See Plaintiff's <u>Notice of Constutional Questions</u>.

51. As soon as Plaintiff received the documents in aforementioned packet of ninety one (91) pages that Kevin Hartley sent to Taylor in late September 2012 she and her family went through each document looking for inconsistencies with known communications, documents Beal/LNV had already filed with the court, etc. They found two different copies of an assignment of deed of trust dated November 11, 2002 that were not located in the Sevier County recorder's records. One is incomplete. (See <u>Exhibit C</u> attached hereto.) An earlier title search had not found this assignment of deed in the Sevier County Land Recorder's office so Plaintiff had another title search done after she found these copies of the 2002 deed assignment. They had been filed improperly so that it was impossible to find this assignment of deed unless you already knew about it. This assignment is additional proof that Beal/LNV does not have standing to bring a breach of contract action against Plaintiff as they did in *LNV Corporation v. Gebhardt* because the facts in this assignment and in the ones submitted to the court in *LNV Corporation v. Gebhardt* show that the party (Residential Funding Company LLC fka Residential Funding Corporation) that allegedly assigned Plaintiff's deed of trust to Beal/LNV via the 2008 assignment submitted to the court by LNV did not itself have beneficial interest in the deed of trust and therefore could not have legally assigned or transferred it to any other entity.

52. Included with Plaintiff's <u>Exhibit C</u> is a comparison of the Gyana Yeager signature on the 2002 assignment of deed with the Gyana Yeager signature on the alleged "original" Note

submitted to the court by Beal/LNV in *LNV Corporation v. Gebhardt* which Plaintiff had vigorously disputed as a forgery after she was forced to proceed pro se when she finally understood that Defendant Taylor was working for the other side and not for her. (Plaintiff had given Taylor plenty of conclusive evidence that the alleged "original" note was a forgery and that the deed assignments submitted to the court by Beal/LNV were forgeries and that her mortgage had been originated in fraud but he failed to present this evidence to the court.)

53.     Plaintiff also found in the aforementioned packet of ninety one (91) pages Kevin Hartley sent to Taylor evidence that Beal/LNV had manipulated the LIBOR rate so as to charge Plaintiff an inflated interest on the loan. (If this was done on Plaintiff's loan it begs the question how many other loans did Beal/LNV do this with – Beal's ill-gotten profits from this criminal act alone could be in the $Millions of dollars.) This evidence too was given to Taylor but he did nothing with it.

54.     Defendant Beal/LNV filed a motion for summary judgment on August 12, 2013 in *LNV Corporation v. Gebhardt* which was a shock to Plaintiff.

55.     On Friday September 6, 2013 around 2:30 PM Defendant Doug Taylor phoned Plaintiff and asked her to come to his office. He had typed up an affidavit and asked Plaintiff to read it and to make handwritten corrections to it by crossing out and initially those corrections. Taylor hurried Plaintiff through this process. He told her that this needed to be filed immediately because it was the last day to answer LNV's motion for summary judgment. (See Doc 13 filed on September 8, 2013 in *LNV Corporation v. Gebhardt* titled in the docket as "Response to Motion for Summary Judgment by Catherine Gebhardt.") In addition to this affidavit Taylor had prepare

two other documents for Plaintiff to mail to the court. (See Doc 11 and 12 also filed on September 8, 2013 in *LNV Corporation v. Gebhardt*).

56.     Taylor told Plaintiff to hurry to the bank and have the affidavit notarized (Plaintiff had a notary in his office.) On her way back from the bank Plaintiff went to her office to pick up evidence to attach to the affidavit to support the claims made in the affidavit. Taylor phoned Plaintiff while she was after her office and told her to hurry. She took the evidence and the notarized affidavit back to Taylor's office and gave the documents to him. He put everything in a stack, and then handed Plaintiff a sealed envelope and told her to take it to UPS and express mail it to the opposing counsel. He told Plaintiff he would file to materials in the outside depository of the district court.

57.     Unknown to Plaintiff until the September 17, 2013 when LNV's counsel in *LNV Corporation v. Gebhardt* filed a pleading titled in the docket as: "Reply to Response to Motion for Summary Judgment" Taylor had not included most of the evidentiary materials she had given him to substantiate the affidavit he had prepared for her to sign. In the aforementioned reply filed by LNV Hartley blasted Plaintiff for violation of Rule 56 and ostensibly asked the court for sanctions against Taylor. (See Doc 14 in the aforementioned case). This showy presentation Plaintiff now believes was meant to throw up a smoke screen to hide improprieties and collusion between Defendant Taylor and counsel for Defendant Beal/LNV.

58.     The Beal/LNV victims in the noticed related cases also challenge the constitutionality of federal Rule 56. See Plaintiff's Notice of Constitutional Questions.

## CAUSE 5
## UNCONSTITUTIONAL AND CRIMINAL SALE OF PLAINITFFS PROPERTY IN VIOLATION OF HER CIVIL RIGHTS

59.     The aforementioned actions and inactions that intentionally deprived Plaintiff of her constitutional rights to due process and equal protection of law in and which was a part of a criminal conspiracy between the named and un-named Defendants to thereby deprive her of her civil rights caused the unconstitutional and illegal sale of property and unconstitutional writ of execution pursuant to Judge Varlan's void summary judgment order favoring Beal's grandchild subsidiary LNV.

60.     Appellate court also allowed the execution of said unconstitutional and void writ in spite of Plaintiffs objections and with an un-adjudicated motion of a serious nature in district court.

### PRAYER FOR RELIEF

61.     WHEREFORE plaintiff prays that she be relieved of the void Judgment and Order entered on or around April 15, 2014 by Judge Thomas A. Varlan for reason that she has been denied her rights to due process and equal protection of law under the Fifth and Fourteenth Amendments of the United States Constitution; and due to fraud upon the court perpetrated by Plaintiff and it counsels; and due to the criminal conspiracy to deny her civil rights.

62.     Pursuant to 18 U.S. Code § 3663A (Mandatory restitution to victims of certain crimes) Plaintiff prays for restitution from each of Defendants for her damages caused by their conspiracy to defraud her and the courts (United States) and for Treble damages under 18 U.S. Code § 1961 et seq. (Racketeer Influenced and Corrupt Organizations).

63.    Plaintiff prays for a criminal investigation into the criminal actions of all named

Defendants, as well as Judge Varlan and the other officers of the court not named as defendants

in her complaint.  She prays for punitive damages sufficient to deter Defendants from continuing

their criminal conspiracy and any other relief the court deems is fair and just.


Respectfully submitted

_Catherine Gebhardt Pro per_

Catherine Gebhardt, Pro-per
3753 Thomas Cross Road
Sevierville, TN 37876
865-333-1526