IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
TENNESSEE AT KNOXVILLE

| | |
|---|---|
| CATHERINE GEBHARDT<br>Plaintiff, pro per<br>v.<br>BEAL FINANCIAL CORPORATION et al,<br>LORRAINE BROWN; JOYCE LINGER;<br>JERRY KERLEY; DOUGLAS E. TAYLOR<br>DOES 1 THROUGH 10<br>Defendants | Case No.: 3:15-cv-268<br><br>OBJECTION TO DEFENDANT<br>KERLEY'S MOTION TO DISMISS<br>AND MOTION FOR DEFAULT<br>JUDGEMENT<br><br>JURY TRIAL DEMANDED |

PLAINTIFF'S OBJECTION TO DEFENDANT KERLEY'S MOTION TO DISMISS AND
MOTION FOR DEFAULT JUDGEMENT

Comes now Plaintiff, Catherine Gebhardt, self represented, and incorporates herein her Notice of Related Cases and all pleadings in her Notice of Constitutional Questions filed in the related case *LNV Corporation v. Gebhardt,* Case No. 3:12-cv-00468 in this court; Case No. 14-5605 in the United States Court of Appeals for the Sixth Circuit, as well as, the Notices of Constitutional Questions filed by the other LNV/Beal victims in the noticed related cases objects to Defendant Jerry Kerely's ("Kerely") Motion to Dismiss and responds to Kerley's arguments in his motion to dismiss [Doc 33] as follows:

Defendant Jerry Kerely's Motion to Dismiss was not timely.

THEREFORE Plaintiff moves this court for a default judgment against Defendant Kerley in the amount equal to her actual damages, or treble her actual damages, and for punitive damages.

In the alternative Defendant Kerley's motion to dismiss should be denied for the following reasons:

1. Defendant Kerley in his response to Plaintiff's complaint and motion to dismiss states: "he was an attorney who operated a title company in Sevier County, Tennessee. The complaint apparently makes a claim regarding Mr. Kerley's participation in her mortgage in 2002." Plaintiff does not dispute this.

2. Defendant Kerley claims his criminal case was wholly unrelated to the Plaintiff's claims. Plaintiff disputes this for the following reasons:

    a. Similarities exist between the crimes for which Kerley was convicted and the conspiracy acts of fraud he and the Lingers, and others, committed against Plaintiff are acts of mail and wire fraud. Straw seller (Ronnie Sulivan) possible fraud against a financial institution. These similarities will become apparent to the court during discovery.

    b. Defendant Kerely's conspiracy scheme was at an earlier stage of evolvement in 2002 than it was when he committed the conspiracy acts detailed by the United States in their conviction of Kerely for conspiracy acts to commit mail and wire fraud based on specific acts identified by the United States committed from August 30, 2005 to March 9, 2006 for which Kerely was caught and criminally prosecuted in 2011.

    c. A criminal conviction is not required to pursue civil RICO claim or a conspiracy to deprive Plaintiff of her civil rights.

3. Kerely claims that the complaint fails to establish diversity jurisdiction. Plaintiff disputes this for the following reasons:

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00. Plaintiff's causes of action are federal question involving violations of her constitutional rights, a conspiracy to interfere with her civil rights pursuant to 42 U.S. Code § 1985 and a civil action for deprivation of her civil rights pursuant to 42 U.S. Code § 1983. The conspiracy acts include similar acts made with intent to similarly interfere with the civil rights of other class members, who together are a certifiable "class" as defined by Rule 23 of Federal Rules of Civil Procedure ("FRCP"). The conspiracy acts to deprive Plaintiff and the other members of the class of their civil rights include acts of deprivation of rights under color of law in violation of 18 U.S. Code § 242. The conspiracy acts include violations of 15 U.S.C. 1601 et seq. (Fair Debt Collection Practices Act, "FDCPA"), and other debt collection abuses. Plaintiff in behalf of themselves and the other class members similarly situated further make a civil claim pursuant to 18 U.S. Code § 1964 that provides a civil remedy for prohibited racketeering activities defined by 15 U.S.C. 1601 and prohibited by 15 U.S.C. 1602.

18 U.S. Code § 1964(a) states:

> "The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons."

The Defendants' conspiracy acts include prohibited racketeering activities or predicate RICO acts as defined by 18 U.S. Code § 1961(1) that includes violations of:

1. 18 U.S. Code § 495 (Forgery of contracts and deeds);
2. 18 U.S. Code § 201 (Bribery of public officials and witnesses);
3. 18 U.S. Code § 1341 (Mail Fraud);
4. 18 U.S. Code § 1343 (Wire Fraud);
5. 18 U.S. Code § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity);
6. 18 U.S. Code § 3663A (Mandatory restitution to victims of certain crimes);
7. 42 U.S. Code § 1983 (Civil action for deprivation of rights);
8. 42 U.S. Code § 1985 (Conspiracy to interfere with civil rights).

Further, Plaintiffs filed a Notice of Constitutional Questions on June 1, 2015 [Doc37] pursuant to Federal Rules 28 U.S.C. § 2403 and 5.1(a)(1). Jurisdiction in this federal district court is proper and this court has jurisdiction specific to Plaintiff's federal question claims against Defendant Linger pursuant to 28 U.S. Code § 1331 which states:

> "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Plaintiff claims that she is a victim of a civil conspiracy by all Defendant's, including Defendant Kerley, to interfere in her civil rights pursuant to 42 U.S. Code § 1985 and from which this civil action for deprivation of her civil rights pursuant to 42 U.S. Code § 1983 arises. Further Defendants, collectively and independently, engaged in conspiracy acts to deprive Plaintiff and the other members of the class of Beal/LNV/MGC victims of their civil rights which include acts of deprivation of rights under color of law in violation of 18 U.S. Code § 242.

Defendants acted in conspiracy and in collusion with each other and with others yet unknown to Plaintiff; beginning with the origination of a mortgage contact in 2002 that was brokered by Defendant Joyce Linger ("Linger") in collusion with Defendant Jerry Kerely, ("Kerely") and ending with a nearly half million dollar summary judgment ordered against Plaintiff by Judge Thomas A. Varlan and the wrongful deprivation of her property as a result of that unconstitutional judgment that deprived her of her life quality, her liberty to make beneficial decisions about the single greatest investment of Plaintiff's lifetime, and of her property without due process and equal protection of the law pursuant to the fifth and fourteenth amendments to the United States Constitution.

4. Defendant Kerley claims Plaintiff's complaint fails to state a claim upon which relief can be granted. In paragraph 4(a) of Kerely's motion to dismiss he states: "plaintiff attempts to state a claim under the Fair Debt Collection Practices Act, the complaint makes no factual averments regarding Mr. Kerley." Plaintiff is not making a claim against Defendant Kerley pursuant to the Fair Debt Collections Practices Act.

Plaintiff's claim against Kerely is that he engaged in a conspiracy to defraud her and that he engaged in specific prohibited racketeering activities with Defendant Joyce Linger, Defendant Lorriane Brown, and Defendant Beal Financial Corporation aka LNV Corporation, and others including but is not limited to Joyce Linger's husband Neal Linger, GMAC-RFC, Bank One N.A., Sebring Capital Partners, NealMikeLance Corporation, Michael L. Brown, Neal Meissner, and Lance Welch as part of that conspiracy. 18 U.S. Code § 1964 provides a civil remedy for prohibited racketeering activities defined by 15 U.S.C. 1601 and prohibited by 15 U.S.C. 1602. Additionally Plaintiff claims that the Defendants' activities include a conspiracy to interfere with her civil rights pursuant to 42 U.S. Code §

1985 and she brings this civil action for deprivation of her civil rights pursuant to 42 U.S. Code § 1983.

Further, Defendants, collectively and independently, engaged in conspiracy acts to deprive Plaintiff and other Beal/LNV/MGC victims of their properties without due process and equal protection of law, and under color of law through abuse of judicial process, fraud upon the court and/or undue influence on judges and other officers or employees of the court. All the Beal entities operate under the Beal Financial Corporation umbrella, and all are under the control of D. Andrew Beal. No beneficiary lender exists, making this ordeal all the more opaque and fraudulent. Profits from the Beal enterprise operations are laundered into overseas accounts to avoid taxation and to avoid government regulations.

5. Defendant Kerley claims that Plaintiff's claims are barred by the statute of limitations. Plaintiff disputes this as follows:

    a. A Statute of limitation in Tennessee for fraud is two years from the time the fraud was discovered. Plaintiff only began to discover the fraud and the role Defendant Kerley played in the conspiracy to defraud her in or around May 2014 which is well within this two year statute of limitation. For conspiracy, the limitations period begins to run when the last overt act is committed. See *Fiswick v. United States, 329 U.S. 211 (1946)*. If the members of the conspiracy (all Defendants) continue to conceal the conspiracy, those are overt acts and the statute of limitations will not begin until the concealment ends. The concealment is still ongoing.

    b. When fraud occurs at "loan" origination, where a party to the loan contract, Plaintiff in this case, is induced to by misrepresentations and omissions made by Defendants

Kerely and Linger to enter into that contract and that party, Plaintiff, relied on these misrepresentations and omissions and thereby entered into the transaction without accurately realizing the risks, duties, or obligations incurred; the contract is void and unenforceable. Specific harm caused to Plaintiff as a result of Defendant Kerley's conspiracy acts of fraud occurred when an illegally and unconstitutionally obtained writ of possession was ordered by the Tennessee General Sessions Court which was the result of an illegally and unconstitutionally obtained a writ of execution ordered by Judge Varlan on or around April 22, 2015; the result of an illegally and unconstitutionally obtained summary judgment order favoring Defendant Beal Financial Corporation aka LNV Corporation in a breach of contract complaint based on the same loan contract originated in fraud by Defendants Kerely, Linger and other parties to the transaction not known to Plaintiff, and intentionally hidden from Plaintiff; and as a result Plaintiff was evicted from her property during the week beginning November 1, 2015.

   c. All members of the conspiracy are equally guilty of all crimes committed pursuant to and in furtherance of the conspiracy. For example, if, in the process of committing the bank fraud pursuant to the conspiracy one of the co-conspirators illegally laundered the money proceeds, all of the conspirators would be criminally liable for the unlawful money laundering as well as the bank fraud and criminal conspiracy." *United States v. Zabic, 745 F.2d 464, 474-75 (7th Cir. 1984).*

6. Defendant Kerley claims the complaint fails to state any claim of fraud with specificity. Rule 9(b), F.R.Civ.P. Plaintiff disputes this as follows:

a. On November 7, 2002 Defendant Kerley prepared a settlement statement in which the figures do not balance (see **Exhibit A** attached hereto). The problems pointed out below with the transaction's settlement statement, Truth in Lending Disclosure Statement, and deed recordings are not simple errors but were done with intent to deceive. The following issues are but a few representative examples of the deception inherent in the transaction's origination:

   i. The origination fees are omitted from the settlement statement. Items on the settlement statement are taxable. This omission was an intentional act of tax evasion by Defendant Kerley. Guaranty Land Title used a process called "net funding" where origination fees were already subtracted by the "lender" at the time the credit was processed to Guaranty Land Title via its escrow account at Sevier County Bank. This is shown by a comparison of the settlement statement (Exhibit A) and the fed wire transmission to Guaranty Land Title by Bank One N.A. (see page 6 of **Exhibit B** attached hereto). Note that on page 1 item 202 states: "Principal Amount of New Loan(s) $243,100.00", while the fed wire states: "3100} Sender: 071000013 Bank One NA CHCO {2000} Amount: $242,485.02." Subtract $242,485.02 from $243,100.00 and you get $614.98. If you multiple this by 50,000 transactions where similar origination fees are not reported on settlement statements, then the parties involved in this tax evasion activity have avoided paying taxes on $3,074,900.00. Plaintiff, the other Beal/LNV/MGC victims, as well as all taxpaying citizens are harmed when such parties evade paying taxes like this.

ii. On page 1 of the settlement statement item 202 it states: "Principal Amount of New Loan(s) $243,100.00" whereas on the Truth in Lending Disclosure Statement attached hereto as **Exhibit C** states the amount financed as $237,460.52. The amount financed does not match on these two documents both signed on November 7, 2002.

iii. On page 2 line 700 of settlement statement it states: "TOTAL COMMISSION Based on Price $280,000 @ 6.0000% $16,800.00" On page 1 line 101 of settlement statement it states: "Contract Sales Price $286,000.00". The contract sale price reflected in items 101 and 401 is stated at $286,000.00; 6% of $286,000.00 is $17,160 not $16,800.00 as stated on page 2 of the settlement statement item 700. This discrepancy resulted in a reduction of payments from sellers funds at settlement.

iv. On page 1 items 209 and 509 state: "Subordinate Financing $28,000" is an amount that has nothing to do with this loan. This was the amount Plaintiff had agreed to pay seller for an extra three acres of undeveloped land adjacent to the property located at 3753 Thomas Cross Road, Sevierville, TN 37862. This was a completely separate transaction between Plaintiff and Ronnie Sullivan where Sullivan was carrying the financing and Plaintiff made payments directly to him. The property involved with this transaction was separate from the property being financed by Sebring Capital Partners, Limited Partnership, see **Exhibit D** attached hereto;

v. Item 903 on page 2 of the settlement statement states: "Hazard Insurance premium for 1.0 years to Allstate $2,172.00" yet this policy was not in effect on November 7, 2002 and was an overstated fee charged to Plaintiff on the settlement statement, see **Exhibit E** attached hereto.

b. Documents retrieved from Jerry Kerley's office not filled out by Plaintiff, but filled out by Kerley or a co-conspirator, which falsely stated Plaintiff was not a U.S. citizen and that she was not purchasing the property for residential purposes, see **Exhibit F** attached hereto;

c. Defendant Kerley caused to be filed in the Sevier County land records by use of mail or wire transmission on November 13, 2002 a general warranty deed stating: "I/we, hereby swear or affirm that the actual consideration for this transfer, or value of the property transferred whichever is greater, is $50.00 which amount is equal to or greater than the amount which the property or interest in property transferred would command at a fair and voluntary sale." Plaintiff does not recall signing this document; if she did she had no idea what she signed. It makes no sense, see **Exhibit G** attached hereto;

d. Defendant Kerley caused to be filed in the Sevier County land records by use of mail or wire transmission on November 13, 2002 a general warranty deed for the same address as the abovementioned warranty deed stating: "I/we, hereby swear or affirm that the actual consideration for this transfer, or value of the property transferred whichever is greater, is $286,000.00 which amount is equal to or greater than the

amount which the property or interest in property transferred would command at a fair and voluntary sale." See **Exhibit H** attached hereto;

   e. These two warranty deeds are at odds with each other, with the settlement statement (Exhibit A) and with the $28,000 promissory note between Plaintiff and Ronnie Sullivan for the additional three acres of land (Exhibit B). Furthermore Plaintiff and Sullivan later agreed to cancel their purchase agreement, so those three acres went back to Ronnie Sullivan.

7. Defendant Kerley claims that Plaintiff's claims should be dismissed based on the principles of former adjudication. No adjudication has ever taken place specific to Plaintiff's claims against Defendant Kerley.

**THEREFORE** Defendant Kerley's Motion to dismiss should be denied.

Respectfully submitted

*/s/ Catherine Gebhardt/*

Catherine Gebhardt, Pro-per
3753 Thomas Cross Road
Sevierville, TN 37876
865-333-1526